**Fill in this information to identify your case:**

Debtor 1: Sherry Marie Newton
First Name / Middle Name / Last Name

Debtor 2 (Spouse, if filing): ____________
First Name / Middle Name / Last Name

United States Bankruptcy Court for the: Northern District of Texas

Case Number (If known): 26-44706-mxm7

Official Form 427

# Cover Sheet for Reaffirmation Agreement

12/15

**Anyone who is a party to a reaffirmation agreement may fill out and file this form. Fill it out completely, attach it to the reaffirmation agreement, and file the documents within the time set under Bankruptcy Rule 4008.**

## Part 1: Explain the Repayment Terms of the Reaffirmation Agreement

**1. Who is the Creditor?**

Bank of America, N.A.
Name of the creditor

**2. How much is the debt?**

On the date that the bankruptcy case is filed $13,217.12

To be paid under the reaffirmation agreement $13,232.58

$309.66 per month for 54 months (if fixed interest rate) plus any balloon or deferred payment due per the terms of the note (if applicable).

**3. What is the Annual Percentage Rate (APR) of interest? (See Bankruptcy Code § 524(k)(3)(E).)**

Before the bankruptcy case was filed 10.69 %

Under the reaffirmation agreement 10.69 %

■ Fixed Rate
☐ Adjustable Rate

**4. Does collateral secure the debt?**

☐ No
■ Yes. Describe the collateral. 2019 CHEVROLET MALIBU #9966 VIN# 1G1ZE5SX8KF189487

Current market value $9,750.00

**5. Does the creditor assert that the debt is non-dischargeable?**

■ No
☐ Yes. Attach an explanation of the nature of the debt and the basis for contending that the debt is non-dischargeable.

**6. Using information from *Schedule I: Your Income* (Official Form 106I) and *Schedule J: Your Expenses* (Official Form 106J), fill in the amounts.**

| Income and expenses reported on Schedules I and J | | Income and expenses stated on the reaffirmation agreement | |
|---|---|---|---|
| 6a. Combined monthly income from line 12 of Schedule I | $ 2,905.88 | 6e. Monthly income from all sources after payroll deductions | $ 2,905.88 |
| 6b. Monthly expenses from line 22c of Schedule J | $ 2,811.90 | 6f. Monthly expenses | $ 2,811.90 |
| 6c. Monthly payments on all reaffirmed debts not listed on Schedule J | $ 0.00 | 6g. Monthly payments on all reaffirmed debts not included in monthly expenses | $ 0.00 |
| 6d. **Scheduled net monthly income** Subtract lines 6b and 6c from 6a. If the total is less than 0, put the number in brackets. | $ 93.98 | 6h. **Present net monthly income** Subtract lines 6f and 6g from 6e. If the total is less than 0, put the number in brackets. | $ 93.98 |

Debtor 1 Sherry Marie Newton — First Name Middle Name Last Name
Case Number *(if known)* 26-44706-mxm7

| | | |
|---|---|---|
| **7. Are the income amounts on lines 6a and 6e different?** | ☒ No<br>☐ Yes. | Explain why they are different and complete line 10. |
| **8. Are the expense amounts on lines 6b and 6f different?** | ☒ No<br>☐ Yes. | Explain why they are different and complete line 10. |
| **9. Is the net monthly income in line 6h less than 0?** | ☒ No<br>☐ Yes. | A presumption of hardship arises (unless the creditor is a credit union).<br>Explain how the debtor will make monthly payments on the reaffirmed debt and pay other living expenses.<br>Complete line 10. |
| **10. Debtor's certification about lines 7-9**<br>If any answer on lines 7-9 is *Yes*, the debtor must sign here.<br>If all the answers on lines 7-9 are No, go to line 11. | | I certify that each explanation on lines 7-9 is true and correct.<br>✗ ______________ Signature of Debtor 1<br>✗ ______________ Signature of Debtor |
| **11. Did an attorney represent the debtor in negotiating the reaffirmation agreement?** | ☐ No<br>☒ Yes. | Has the attorney executed a declaration or an affidavit to support the reaffirmation agreement?<br>☐ No<br>☒ Yes |

## Part 2: Sign Here

Whoever fills out this form must sign here.

**I certify that the attached agreement is a true and correct copy of the reaffirmation agreement between the parties identified on this *Cover Sheet* for *Reaffirmation Agreement*.**

✗ Niconya Thomas
Signature

Date 11-23-2026
MM/DD/YYYY

Niconya Thomas-AVP
Printed Name

Check one:
☐ Debtor or Debtor's Attorney
■ Creditor or Creditor's Attorney

B2400A/B ALT (Form 2400A/B ALT) (12/15)

☐ **Presumption of Undue Hardship**
☒ **No Presumption of Undue Hardship**

(Check box as directed in Part D: Debtor's Statement in Support of Reaffirmation Agreement.)

# UNITED STATES BANKRUPTCY COURT
## Northern District of Texas (Ft. Worth)

In re: Sherry Marie Newton
Debtor (s)

Case No. 26-44706-mxm7
Chapter: 07

# REAFFIRMATION AGREEMENT

*[Indicate all documents included in this filing by checking each applicable box.]*

☒ Part A: Disclosures, Instructions, and Notice to Debtor (pages 1 - 5)

☒ Part B: Reaffirmation Agreement

☒ Part C: Certification by Debtor's Attorney

☒ Part D: Part D: Debtor's Statement in, Support of Reaffirmation Agreement

☐ Part E: Motion for Court Approval

[*Note:* Complete Part E only if debtor was not represented by an attorney during the course of negotiating this agreement. *Note also:* If you complete Part E, you must prepare and file Form 2400C ALT - Order on Reaffirmation Agreement.]

**Name of Creditor:** **Bank of America, N.A.**

☐ *[Check this box if]* Creditor is a Credit Union as defined in §19(b)(1)(a)(iv) of the Federal Reserve Act

## PART A: DISCLOSURE STATEMENT, INSTRUCTIONS AND NOTICE TO DEBTOR

### 1. DISCLOSURE STATEMENT

***Before Agreeing to Reaffirm a Debt, Review These Important Disclosures*:**

## SUMMARY OF REAFFIRMATION AGREEMENT

This Summary is made pursuant to the requirements of the Bankruptcy Code.

## AMOUNT REAFFIRMED

The amount of debt you have agreed to reaffirm: $13,232.58

***The amount of debt you have agreed to reaffirm includes all fees and costs (if any) that have accrued as of the date of this disclosure. Your credit agreement may obligate you to pay additional amounts which may come due after the date of this disclosure. Consult your credit agreement.***

## ANNUAL PERCENTAGE RATE

*[The annual percentage rate can be disclosed in different ways, depending on the type of debt.]*

a. If the debt is an extension of "credit" under an "open end credit plan," as those terms are defined in § 103 of the Truth in Lending Act, such as a credit card, the creditor may disclose the annual percentage rate shown in (i) below or, to the extent this rate is not readily available or not applicable, the simple interest rate shown in (ii) below, or both.

(i) The Annual Percentage Rate disclosed, or that would have been disclosed, to the debtor in the most recent periodic statement prior to entering into the reaffirmation agreement described in Part B below or, if no such periodic statement was given to the debtor during the prior six months, the annual percentage rate as it would have been so disclosed at the time of the disclosure statement:________%.

--- *And/Or* ---

(ii) The simple interest rate applicable to the amount reaffirmed as of the date this disclosure statement is given to the debtor:________%. If different simple interest rates apply to different balances included in the amount reaffirmed, the amount of each balance and the rate applicable to it are:

$______________ @ ______________%;
$______________ @ ______________%;
$______________ @ ______________%;

b. If the debt is an extension of credit other than under than an open end credit plan, the creditor may disclose the annual percentage rate shown in (I) below, or, to the extent this rate is not readily available or not applicable, the simple interest rate shown in (ii) below, or both.

(i) The Annual Percentage Rate under §128(a)(4) of the Truth in Lending Act, as disclosed to the debtor in the most recent disclosure statement given to the debtor prior to entering into the reaffirmation agreement with respect to the debt or, if no such disclosure statement was given to the debtor, the annual percentage rate as it would have been so disclosed: 10.69 %.

--- *And/Or* ---

(ii) The simple interest rate applicable to the amount reaffirmed as of the date this disclosure statement is given to the debtor:________%. If different simple interest rates apply to different balances included in the amount reaffirmed, the amount of each balance and the rate applicable to it are:

$____________ @ ____________ %
$____________ @ ____________ %
$____________ @ ____________ %

c. If the underlying debt transaction was disclosed as a variable rate transaction on the most recent disclosure given under the Truth in Lending Act:

> The interest rate on your loan may be a variable interest rate which changes from time to time, so that the annual percentage rate disclosed here may be higher or lower.

d. If the reaffirmed debt is secured by a security interest or lien, which has not been waived or determined to be void by a final order of the court, the following items or types of items of the debtor's goods or property remain subject to such security interest or lien in connection with the debt or debts being reaffirmed in the reaffirmation agreement described in Part B.

| Item or Type of Item | Original Purchase Price or Original Amount of Loan |
|---|---|
| 2019 CHEVROLET MALIBU #9966 VIN# 1G1ZE5SX8KF189487 | $14,280.76 |

*Optional ---At the election of the creditor, a repayment schedule using one or a combination of the following may be provided:*

**Repayment Schedule:**

Your first payment in the amount of $309.66 is due 11/24/2026 but the future payment amount may be different. Consult your reaffirmation agreement or credit agreement, as applicable.

— Or —

Your payment schedule will be: __________ payments in the amount of: __________ each, payable (**monthly**, annually, weekly, etc.) on the __________ (**day**) of each Month (week, **month**, etc.), unless altered later by mutual agreement in writing.

— Or —

A reasonably specific description of the debtor's repayment obligations to the extent known by the creditor or creditor's representative.

## 2. INSTRUCTIONS AND NOTICE TO DEBTOR

**Reaffirming a debt is a serious financial decision.** The law requires you to take certain steps to make sure the decision is in your best interest. If these steps are not completed, the reaffirmation agreement is not effective, even though you have signed it.

1. Read the disclosures in this Part A carefully. Consider the decision to reaffirm carefully. Then, if you want to reaffirm, sign the reaffirmation agreement in Part B (or you may use a separate agreement you and your creditor agree on).

2. Complete and sign Part D and be sure you can afford to make the payments you are agreeing to make and have received a copy of the disclosure statement and a completed and signed reaffirmation agreement.

3. If you were represented by an attorney during the negotiation of your reaffirmation agreement, the attorney must have signed the certification in Part C.

4. If you were not represented by an attorney during the negotiation of your reaffirmation agreement, you must have completed and signed Part E.

5. The original of this disclosure must be filed with the court by you or your creditor. If a separate reaffirmation agreement (other than the one in Part B) has been signed, it must be attached.

6. <u>If the creditor is not a Credit Union</u> and you were represented by an attorney during the negotiation of your reaffirmation agreement, your reaffirmation agreement becomes effective upon filing with the court unless the reaffirmation is presumed to be an undue hardship as explained in Part D. <u>If the creditor is a Credit Union</u> and you were represented by an attorney during the negotiation of your reaffirmation agreement, your reaffirmation agreement becomes effective upon filing with the court.

7. If you were not represented by an attorney during the negotiation of your reaffirmation agreement, it will not be effective unless the court approves it. The court will notify you and the creditor of the hearing on your reaffirmation agreement. You must attend this hearing in bankruptcy court where the judge will review your reaffirmation agreement. The bankruptcy court must approve your reaffirmation agreement as consistent with your best interests, except that no court approval is required if your reaffirmation agreement is for a consumer debt secured by a mortgage, deed of trust, security deed, or other lien on your real property, like your home.

## YOUR RIGHT TO RESCIND (CANCEL) YOUR REAFFIRMATION AGREEMENT

You may rescind (cancel) your reaffirmation agreement at any time before the bankruptcy court enters a discharge order, or before the expiration of the 60-day period that begins on the date your reaffirmation agreement is filed with the court, whichever occurs later. To rescind (cancel) your reaffirmation agreement, you must notify the creditor that your reaffirmation agreement is rescinded (or canceled).

**Frequently Asked Questions:**

What are your obligations if you reaffirm the debt? A reaffirmed debt remains your personal legal obligation. It is not discharged in your bankruptcy case. That means that if you default on your reaffirmed debt after your bankruptcy case is over, your creditor may be able to take your property or your wages. Otherwise, your obligations will be determined by the reaffirmation agreement which may have changed the terms of the original agreement. For example, if you are reaffirming an open end credit agreement, the creditor may be permitted by that agreement or applicable law to change the terms of that agreement in the future under certain conditions.

Are you required to enter into a reaffirmation agreement by any law? No, you are not required to reaffirm a debt by any law. Only agree to reaffirm a debt if it is in your best interest. Be sure you can afford the payments you agree to make.

What if your creditor has a security interest or lien? Your bankruptcy discharge does not eliminate any lien on your property. A ''lien'' is often referred to as a security interest, deed of trust, mortgage or security deed. Even if you do not reaffirm and your personal liability on the debt is discharged, because of the lien your creditor may still have the right to take the property securing the lien if you do not pay the debt or default on it. If the lien is on an item of personal property that is exempt under your State's law or that the trustee has abandoned, you may be able to redeem the item rather than reaffirm the debt. To redeem, you must make a single payment to the creditor equal to the amount of the allowed secured claim, as agreed by the parties or determined by the court.

> **NOTE:** When this disclosure refers to what a creditor ''may'' do, it does not use the word "may'' to give the creditor specific permission. The word ''may'' is used to tell you what might occur if the law permits the creditor to take the action. If you have questions about your reaffirming a debt or what the law requires, consult with the attorney who helped you negotiate this agreement reaffirming a debt. If you don't have an attorney helping you, the judge will explain the effect of your reaffirming a debt when the hearing on the reaffirmation agreement is held.

**PART B: REAFFIRMATION AGREEMENT**

I (we) agree to reaffirm the debts arising under the credit agreement described below

1. Note executed 04/09/2026 for a 2019 CHEVROLET MALIBU #9966 VIN# 1G1ZE5SX8KF189487.
2. Description of any changes to the credit agreement made as part of this reaffirmation agreement:

SIGNATURE(S):

Borrower:

Sherry Newton
(Print Name)

[signature]
(Signature)

Date: 11-5-26

Co-borrower, if also reaffirming these debts:

(Print Name)

(Signature)

Date:

Accepted by creditor:

Bank of America, N.A.
(Printed Name of Creditor)

FL9-300-03-05
9000 Southside Blvd Building 300
Jacksonville, FL 32256
(Address of Creditor)

[signature] 11-23-2026
(Signature) (Date)

Niconya Thomas—AVP
(Printed Name and Title of Individual Signing for Creditor)

Date of creditor acceptance:

10/26/2026

**PART C: CERTIFICATION BY DEBTOR'S ATTORNEY (IF ANY).**

*[To be filed only if the attorney represented the debtor during the course of negotiating this agreement.]*

I hereby certify that (1) this agreement represents a fully informed and voluntary agreement by the debtor; (2) this agreement does not impose an undue hardship on the debtor or any dependent of the debtor; and (3) I have fully advised the debtor of the legal effect and consequences of this agreement and any default under this agreement.

☐ *[Check box, if applicable and the creditor is not a Credit Union.]* A presumption of undue hardship has been established with respect to this agreement. In my opinion, however, the debtor is able to make the required payment.

Printed Name of Debtor's Attorney: Clayton L. Everett

Signature of Debtor's Attorney: Clayton L. Everett

Date: 11-13-2026

**PART D: DEBTOR'S STATEMENT IN SUPPORT OF REAFFIRMATION AGREEMENT**

*[Read and complete sections 1 and 2, **OR**, if the creditor is a Credit Union and the debtor is represented by an attorney, read section 3. Sign the appropriate signature line(s) and date your signature. If you complete sections 1 and 2 **and** your income less monthly expenses does not leave enough to make the payments under this reaffirmation agreement, check the box at the top of page 1 indicating "Presumption of Undue Hardship." Otherwise, check the box at the top of page 1 indicating "No Presumption of Undue Hardship"]*

1. I believe this reaffirmation agreement will not impose an undue hardship on my dependents or me. I can afford to make the payments on the reaffirmed debt because my monthly income (take home pay plus any other income received) is $ 2,905.88, and my actual current monthly expenses including monthly payments on post-bankruptcy debt and other reaffirmation agreements total $ 2,502.24, leaving $ 403.64 to make the required payments on this reaffirmed debt.

I understand that if my income less my monthly expenses does not leave enough to make the payments, this reaffirmation agreement is presumed to be an undue hardship on me and must be reviewed by the court. However, this presumption may be overcome if I explain to the satisfaction of the court how I can afford to make the payments here: ________________

**(Use an additional page if needed for a full explanation.)**

2. I received a copy of the Reaffirmation Disclosure Statement in Part A and a completed and signed reaffirmation agreement.

Signed: [signature]
(Debtor)

________________
(Joint Debtor, if any)

Date: 11-5-26

— *Or* —

*[If the creditor is a Credit Union and the debtor is represented by an attorney]*

3. I believe this reaffirmation agreement is in my financial interest. I can afford to make the payments on the reaffirmed debt. I received a copy of the Reaffirmation Disclosure Statement in Part A and a completed and signed reaffirmation agreement.

Signed: ________________
(Debtor)

________________
(Joint Debtor, if any)

Date: ________

LAW 553-TX-eps-14 3/25

## MOTOR VEHICLE RETAIL INSTALLMENT SALES CONTRACT
## SIMPLE FINANCE CHARGE

| | |
|---|---|
| BUYER SHERRY MARIE NEWTON | CO-BUYER N/A |
| ADDRESS [redacted] | ADDRESS N/A |
| CITY [redacted] STATE [redacted] ZIP [redacted] | CITY N/A STATE N/A ZIP N/A |
| PHONE [redacted] | PHONE N/A |
| EMAIL [redacted] | EMAIL N/A |

SELLER/CREDITOR MORITZ CHRYSLER/JEEP LTD ADDRESS 9101 CAMP BOWIE W
CITY FORT WORTH STATE TX ZIP 76121 PHONE [redacted]

The Buyer is referred to as "you" or "your." The Seller is referred to as "we" or "us." This contract may be transferred by the Seller.

**PROMISE TO PAY:** The credit price is shown below as the "Total Sales Price." The "Cash Price" is also shown in the Itemization of Amount Financed. By signing this contract, you choose to purchase the vehicle on credit according to the terms of this contract. You agree to pay us the Amount Financed, Finance Charge, and any other charges in this contract. You agree to make payments in U.S. funds according to the Payment Schedule in this contract. If more than one person signs as a buyer, you agree to keep all the promises in this agreement even if the others do not.

You have thoroughly inspected, accepted, and approved the vehicle in all respects.

### VEHICLE IDENTIFICATION

| YEAR | MAKE | MODEL | VEHICLE IDENTIFICATION NUMBER | | USE FOR WHICH PURCHASED: PERSONAL, FAMILY, OR HOUSEHOLD UNLESS OTHERWISE INDICATED BELOW |
|---|---|---|---|---|---|
| 2019 | CHEVROLET | MALIBU | 1G1ZE5SX8KF189487 | ☐ NEW ☐ DEMONSTRATOR ☐ FACTORY OFFICIAL/EXECUTIVE ☒ USED | If either of the boxes below is checked, Chapter 353 of the Texas Finance Code applies to this Contract. ☐ BUSINESS OR COMMERCIAL ☐ AGRICULTURAL ☐ N/A |

Trade-in: Make N/A Model N/A
Year N/A VIN N/A License No. N/A

### FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. | Total Sale Price The total cost of your purchase on credit, including your down payment of $ 0.00 |
|---|---|---|---|---|
| 10.69 % | $ 4298.84 | $ 14280.76 | $ 18579.60 | $ 18579.60 |

**Your Payment Schedule Will Be:** (e) means an estimate

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 60 | $ 309.66 | MONTHLY beginning 05/24/2026 |
| N/A | $ N/A | N/A |
| N/A | | |

**Late Charge:** If we do not receive your entire payment within 15 days after it is due (10 days if you are buying a heavy commercial vehicle), you will pay a late charge of 5% of the scheduled payment.
**Prepayment.** If you pay early, you will not have to pay a penalty.
**Security Interest.** We will have a security interest in the vehicle being purchased.
**Additional Information:** See this document for more information about nonpayment, default, security interests, and any required repayment in full before the scheduled date.

**SERVICING AND COLLECTION CONTACTS**

In consideration of our extension of credit to you, you agree to provide us your contact information for our servicing and collection purposes. You agree that we may use this information to contact you at any mailing address, e-mail address, or phone number you give us as the law allows. We may try to contact you in writing (including mail, e-mail, and text messages) and by phone (including prerecorded or artificial voice messages and automatic telephone dialing systems). You agree to allow our agents and service providers to contact you as agreed above.

You agree that you will, within a reasonable time, notify us of any change in your contact information.

**Returned Payment Charge:** You agree to pay a charge of $ 30 if any check you give us is dishonored or any electronic payment is returned unpaid.

**OCCC NOTICE. For questions or complaints about this contract, contact BANK OF AMERICA NA at (800) 991-1770. The Office of Consumer Credit Commissioner (OCCC) is a state agency, and it enforces certain laws that apply to this contract. If a complaint or question cannot be resolved by contacting the creditor, consumers can contact the OCCC to file a complaint or ask a general credit-related question. OCCC address: 2601 N. Lamar Blvd., Austin, Texas 78705. Phone: (800) 538-1579. Fax: (512) 936-7610. Website: occc.texas.gov. E-mail: consumer.complaints@occc.texas.gov.**

Buyer Initials X SMN Co-Buyer Initials X N/A

ORIGINAL LIENHOLDER

## ITEMIZATION OF AMOUNT FINANCED

1 Cash Price (including any accessories, services, taxes, SALES TAX $ 735.06 N/A $ N/A N/A $ N/A, and N/A $ N/A) $ 12496.06 (1)

2 Total Downpayment = (if negative, enter "0" and see Line 4A below)

| | |
|---|---|
| Gross Trade-In | $ N/A |
| – Pay Off Made By Seller to N/A | $ N/A |
| – Cash Paid to Buyer for Trade-In | $ N/A |
| = Net Trade-In | $ N/A |
| + Cash | $ N/A |
| + Mfrs. Rebate | $ N/A |
| + Other (describe) N/A | $ N/A |
| + Other (describe) N/A | $ N/A |
| + Other (describe) N/A | $ N/A |
| + Other (describe) N/A | $ N/A |
| + Other (describe) Trade-In Credit Agreement Benefit | $ N/A |
| Total Downpayment | $ N/A (2) |

3 Unpaid Balance of Cash Price (1 minus 2) $ 12496.06 (3)

4 Other Charges Including Amounts Paid to Others on Your Behalf (Seller may keep part of these amounts.):

| | | |
|---|---|---|
| A | Net trade-in payoff to N/A | $ N/A |
| B | Cost of Optional Credit Insurance Paid to Insurance Company or Companies. Life $ N/A; Disability $ N/A | $ N/A |
| C | Other Optional Insurance Paid to Insurance Company or Companies | $ N/A |
| D | Official Fees Paid to Government Agencies | |
| | 1) to STATE OF TX for RD & BRIDGE FEE | $ 10.00 |
| | 2) to STATE OF TX for EMISSIONS INSP FEE | $ 2.75 |
| | 3) to N/A for N/A | $ N/A |
| E | Debt Cancellation Agreement Fee Paid to the Seller | $ 640.00 |
| F | Dealer's Inventory Tax (if Not Included in Cash Price) | $ 21.45 |
| G | Sales Tax (if Not Included in Cash Price) | $ N/A |
| H | Other Taxes (if Not Included in Cash Price) | $ N/A |
| I | Government License and/or Registration Fees: REGISTRATION FEE$50.75/P&H FEE$4.75 BUYER PLATE FEE$10/DPS FEE$1 | $ 66.50 |
| J | Government Certificate of Title Fees | $ 33.00 |
| K | Government Vehicle Inspection Program Replacement Fee | $ 7.50 |
| L | Vehicle Emissions Inspection Fee | $ 18.50 |
| M | Deputy Service Fee Paid to Dealer | $ 10.00 |
| N | **Documentary Fee (Cargo Documental)** | $ 225.00 |

**A DOCUMENTARY FEE IS NOT AN OFFICIAL FEE. A DOCUMENTARY FEE IS NOT REQUIRED BY LAW, BUT MAY BE CHARGED TO BUYERS FOR HANDLING DOCUMENTS RELATING TO THE SALE. A DOCUMENTARY FEE MAY NOT EXCEED A REASONABLE AMOUNT AGREED TO BY THE PARTIES. THIS NOTICE IS REQUIRED BY LAW.**

**UN CARGO DOCUMENTAL NO ES UN CARGO OFICIAL. LA LEY NO EXIGE QUE SE IMPONGA UN CARGO DOCUMENTAL, PERO ÉSTE PODRÍA COBRARSE A LOS COMPRADORES POR EL MANEJO DE LA DOCUMENTACIÓN EN RELACIÓN CON LA VENTA. UN CARGO DOCUMENTAL NO PUEDE EXCEDER UNA CANTIDAD RAZONABLE ACORDADA POR LAS PARTES. ESTA NOTIFICACIÓN SE EXIGE POR LEY.**

O Other Charges (Seller must identify who is paid and describe purpose.)

| To | For | Amount |
|---|---|---|
| State | Plate Transfer Fee | $ N/A |
| Seller | Trade-In Credit Agreement | $ N/A |
| MAP | FULL 36MO/999999MI | $ 750.00 |
| N/A | N/A | $ N/A |
| N/A | N/A | $ N/A |
| N/A | N/A | $ N/A |
| N/A | N/A | $ N/A |
| N/A | N/A | $ N/A |
| N/A | N/A | $ N/A |
| N/A | N/A | $ N/A |
| N/A | N/A | $ N/A |
| N/A | N/A | $ N/A |
| N/A | N/A | $ N/A |

Total Other Charges and Amounts Paid to Others on Your Behalf $ 1784.70 (4)

5 Amount Financed (3 + 4) $ 14280.76 (5)

**PROPERTY INSURANCE. You must keep the collateral insured against damage or loss in the amount you owe. You must keep this insurance until you have paid all that you owe under this contract. You may obtain property insurance from anyone you want or provide proof of insurance you already have. The insurer must be authorized to do business in Texas.** You agree to give us proof of property insurance. You must name us as the person to be paid under the policy in the event of damage or loss.

If any insurance is checked below, policies or certificates from the insurance companies will describe the terms, conditions, and deductibles.

### *Optional Credit Life and Credit Disability Insurance*

Credit life insurance and credit disability insurance are not required to obtain credit. They will not be provided unless you sign and agree to pay the extra cost. Your decision to buy or not buy these insurance coverages will not be a factor in the credit approval process.

☐ Credit Life, one buyer $ N/A Term N/A
☐ Credit Life, both buyers $ N/A Term N/A
☒ Credit Disability, one buyer $ N/A Term N/A
☐ Credit Disability, both buyers $ N/A Term N/A

N/A
(Insurance Company)
N/A
(Home Office Address)

Credit life insurance pays only the amount you would owe if you paid all your payments on time. Credit disability insurance does not cover any increase in your payment or in the number of payments.

If the term of the insurance is 121 months or longer, the premium is not fixed or approved by the Texas Insurance Commissioner.

**You want the insurance indicated above.**

X N/A — N/A
Buyer's signature — Date
X N/A — N/A
Co-Buyer's signature — Date

### *Optional Insurance Coverages and Debt Cancellation Agreement*

**The granting of credit will not be dependent on the purchase of either the insurance coverages or the debt cancellation agreement described below. It will not be provided unless you sign and agree to pay the extra cost. The credit approval process will not be affected by whether or not you buy these insurance coverages or the debt cancellation agreement.**

| Coverage | Term in Months | Premium or Fee |
|---|---|---|
| GAP* | N/A | ☒ $ N/A |
| N/A | N/A | ☐ $ N/A |
| N/A | N/A | ☐ $ N/A |
| Debt Cancellation Agreement** | 60 | $ 640.00 |

EFG GAP
(Insurance Company)

(Home Office Address)

*If the vehicle is determined to be a total loss, GAP insurance will pay us the difference between the proceeds of your basic collision policy and the amount you owe on the vehicle, minus your deductible. You can cancel that insurance without charge for 10 days from the date of this contract.

**WE WILL CANCEL CERTAIN AMOUNTS YOU OWE UNDER THIS CONTRACT IN THE CASE OF A TOTAL LOSS OR THEFT OF THE VEHICLE AS STATED IN THE DEBT CANCELLATION AGREEMENT. You can cancel the debt cancellation agreement without charge for a period of 30 days from the date of this contract, or for the period stated in the debt cancellation agreement, whichever period ends later.

If the box next to a premium for an insurance coverage included above is marked, that premium is not fixed or approved by the Texas Insurance Commissioner. A debt cancellation agreement is not insurance and is regulated by the Office of the Consumer Credit Commissioner.

For the premiums or fees included above, you want the related optional coverages and debt cancellation agreement.

X [signature] — 04/09/2026
Buyer's signature — Date
X N/A — N/A
Co-Buyer's signature — Date

**LIABILITY INSURANCE:** THIS CONTRACT DOES NOT INCLUDE INSURANCE COVERAGE FOR PERSONAL LIABILITY AND PROPERTY DAMAGE CAUSED TO OTHERS.

**OTHER TERMS AND CONDITIONS**

**1. FINANCE CHARGE AND PAYMENTS**

**a. HOW WE FIGURE THE FINANCE CHARGE.** We figure the Finance Charge using the true daily earnings method as defined by the Texas Finance Code. Under the true daily earnings method, the Finance Charge will be figured by applying the daily rate to the unpaid portion of the Amount Financed for the number of days the unpaid portion of the Amount Financed is outstanding. The daily rate is 1/365th of the Annual Percentage Rate. The unpaid portion of the Amount Financed does not include late charges or return check charges.

**b. HOW WE WILL APPLY YOUR PAYMENTS.** We will apply your payments in the following order:
1. earned but unpaid finance charge; and
2. to anything else you owe under this agreement.

**c. HOW LATE OR EARLY PAYMENTS CHANGE WHAT YOU MUST PAY.** We based the Finance Charge, Total of Payments, and Total Sale Price as if all payments were made as scheduled. If you do not timely make all your payments in at least the correct amount, you will have to pay more Finance Charge. If that happens, your last payment will be more than your final scheduled payment, or at our option, you will have to pay more payments of the same amount as your scheduled payment with a smaller last payment. If you make scheduled payments early, your Finance Charge will be reduced (less). If you make your scheduled payments late, your Finance Charge will increase. We will send you a notice telling you about these changes before the final scheduled payment is due.

**d. TRANSFER OF RIGHTS.** We may transfer this contract to another person. That person will then have all our rights, privileges, and remedies.

**e. SPECIAL PROVISIONS FOR BALLOON PAYMENT CONTRACTS.** A balloon payment is a scheduled payment more than twice the amount of the average of your scheduled payments, other than the downpayment, that are due before the balloon payment. You can pay all you owe when the balloon payment is due and keep your vehicle. If you buy the vehicle primarily for personal, family, or household use, you can enter into a new written agreement to refinance the balloon payment when due without a refinancing fee. If you refinance the balloon payment, your periodic payments will not be larger or more often than the payments in this contract. The annual percentage rate in the new agreement will not be more than the Annual Percentage Rate in this contract. This provision does not apply if your Payment Schedule has been adjusted to your seasonal or irregular income.

**2. YOUR OTHER PROMISES TO US**

**a. USE AND TRANSFER OF THE VEHICLE.** You will not sell or transfer the vehicle without our written permission. If you do sell or transfer the vehicle, this will not release you from your obligations under this contract, and we may charge you a transfer of equity fee of $25.00 ($50 for a heavy commercial vehicle). You will promptly tell us in writing if you change your address or the address where you keep the vehicle. We agree you may remove the vehicle from the U.S. for 72 hours or less, if the vehicle will continue to be covered by the insurance this contract requires. Otherwise, you agree not to remove the vehicle from the U.S. without our written permission.

**b. CARE OF THE VEHICLE.** You agree to keep the vehicle free from all liens, and claims except those that secure this contract. You will timely pay all taxes, fines, or charges pertaining to the vehicle. You will keep the vehicle in good repair. You will not allow the vehicle to be seized or placed in jeopardy or use it illegally. You must pay all you owe even if the vehicle is lost, damaged or destroyed. If a third party takes a lien or claim against or possession of the vehicle, we may pay the third party any cost required to free the vehicle from all liens or claims. We may immediately demand that you pay us the amount paid to the third party for the vehicle. If you do not pay this amount, we may repossess the vehicle and add that amount to the amount you owe. If we do not repossess the vehicle, we may still demand that you pay us, but we cannot compute a finance charge on this amount.

**c. SECURITY INTEREST.** To secure all that you owe on this contract and all your promises in it, you give us a security interest in:
1. The vehicle including all accessories and parts now or later attached and any other goods financed in this contract;
2. All insurance proceeds and other proceeds received for the vehicle;
3. Any insurance policy, service contract or other contract financed by us and any proceeds of those contracts; and
4. Any refunds of charges included in this contract for insurance, or service contracts.

This security interest also secures any extension or modification of this contract. The certificate of title must show our security interest in the vehicle. You will not allow any other security interest to be placed on the title without our written permission.

**d. AGREEMENT TO KEEP VEHICLE INSURED.** You agree to have physical damage insurance covering loss or damage to the vehicle for the term of this contract. The insurance must cover our interest in the vehicle. The insurer must be authorized to do business in Texas.

**e. OUR RIGHT TO PURCHASE REQUIRED INSURANCE IF YOU FAIL TO KEEP THE VEHICLE INSURED.** If you fail to give us proof that you have insurance, we may buy physical damage insurance. We may buy insurance that covers your interest and our interest in the vehicle, or we may buy insurance that covers our interest only. You will pay the premium for the insurance and a finance charge at the contract rate. If we obtain collateral protection insurance, we will mail notice to your last known address shown in our file.

**f. PHYSICAL DAMAGE INSURANCE PROCEEDS.** You must use physical damage insurance proceeds to repair the vehicle, unless we agree otherwise in writing. However, if the vehicle is a total loss, you must use the insurance proceeds to pay what you owe us. You agree that we can use any proceeds from insurance to repair the vehicle, or we may reduce what you owe under this contract. If we apply insurance proceeds to the amount you owe, they will be applied to your payments in the reverse order of when they are due. If your insurance on the vehicle or credit insurance doesn't pay all you owe, you must pay what is still owed. Once all amounts owed under this contract are paid, any remaining proceeds will be paid to you.

**g. RETURNED INSURANCE PREMIUMS AND SERVICE CONTRACT CHARGES.** If we get a refund on insurance or service contracts, or other contracts included in the cash price, we will subtract it from what you owe. Once all amounts owed under this contract are paid, any remaining refunds will be paid to you.

**h. APPLICATION OF CREDITS.** Any credit that reduces your debt will apply to your payments in the reverse order of when they are due, unless we decide to apply it to another part of your debt. The amount of the credit and all finance charge or interest on the credit will be applied to your payments in the reverse order of your payments.

**3. IF YOU PAY LATE OR BREAK YOUR OTHER PROMISES**

**a. LATE CHARGE.** You will pay us a late charge as agreed to in this contract when it accrues.

**b. DEFAULT.** You will be in default if:
1. You do not pay any amount when it is due;
2. You give false, incomplete, or misleading information during credit application;
3. You file bankruptcy, bankruptcy is filed against you, or the vehicle becomes involved in a bankruptcy.
4. You allow a judgment to be entered against you or the collateral; or
5. You break any of your promises in this agreement.

If you default, we can exercise our rights under this contract and our other rights under the law.

**c. OUR RIGHT TO DEMAND PAYMENT IN FULL.** If you default, or we believe in good faith that you are not going to keep any of your promises, we can demand that you immediately pay all that you owe. We don't have to give you notice that we are demanding or intend to demand immediate payment of all that you owe.

**d. REPOSSESSION.** If you default, we may repossess the vehicle from you if we do so peacefully. If your vehicle has an electronic tracking device (such as GPS), you agree that we may use the device to find the vehicle. If any personal items are in the vehicle, we can store them for you and give you written notice at your last known address shown on our records within 15 days of discovering that we have your personal items. If you do not ask for these items back within 31 days from the day we mail or deliver the notice to you, we may dispose of them as applicable law allows. Any accessory, equipment, or replacement part stays with the vehicle.

**e. YOUR RIGHT TO REDEEM.** If we take your vehicle, we will tell you how much you have to pay to get it back. If you do not pay us to get the vehicle back, we can sell it or take other action allowed by law. Your right to redeem ends when the vehicle is sold or we have entered into a contract for sale or accepted the collateral as full or partial satisfaction of a contract.

Buyer Initials X [handwritten initials] Co-Buyer Initials X N/A

ORIGINAL LIENHOLDER

f. **DISPOSITION OF THE VEHICLE.** If you don't pay us to get the vehicle back, we can sell it or take other action allowed by law. If we sell the motor vehicle in a public or private sale, we will send you notice at least 10 days before we sell it. We can use the money we get from selling it to pay allowed expenses and to reduce the amount you owe. Allowed expenses are expenses we pay as a direct result of taking the vehicle, holding it, preparing it for sale, and selling it. If any money is left, we will pay it to you unless we must pay it to someone else. If the money from the sale is not enough to pay all you owe, you must pay the rest of what you owe us plus interest. If we take or sell the vehicle, you will give us the certificate of title and any other document required by state law to record transfer of title.

g. **COLLECTION COSTS.** If we hire an attorney who is not our employee to enforce this contract, you will pay reasonable attorney's fees and court costs as the applicable law allows. You will also pay our reasonable out-of-pocket expenses incurred in connection with retaking, holding, and selling the vehicle as the applicable law allows.

h. **CANCELLATION OF OPTIONAL INSURANCE AND SERVICE CONTRACTS.** This contract may contain charges for insurance or service contracts or for services included in the cash price. If you default, you agree that we can claim benefits under these contracts to the extent allowable, and terminate them to obtain refunds of unearned charges to reduce what you owe or repair the vehicle. If the vehicle is a total loss because it is damaged or stolen, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe.

**4. INTEGRATION AND SEVERABILITY CLAUSE**

This contract contains the entire agreement between you and us relating to the sale and financing of the vehicle. If any part of this contract is not valid, all other parts stay valid.

**5. LEGAL LIMITATIONS ON OUR RIGHTS**

If we don't enforce our rights every time, we can still enforce them later. We will exercise all of our rights in a lawful way. You don't have to pay finance charge or other amounts that are more than the law allows. This provision prevails over all other parts of this contract and over all our other acts.

**6. SELLER'S DISCLAIMER OF WARRANTIES**

**Unless the seller makes a written warranty, or enters into a service contract within 90 days from the date of this contract, the seller makes no warranties, express or implied, on the vehicle, and there will be no implied warranties of merchantability or of fitness for a particular purpose.**

**This provision does not affect any warranties covering the vehicle that the vehicle manufacturer may provide.**

**7. Used Car Buyers Guide. The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.**

**Spanish Translation: Guía para compradores de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.**

**8. NEGATIVE CREDIT REPORT NOTICE**

**We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.**

**9. APPLICABLE LAW**

Federal and Texas law apply to this contract.

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

This PROVISION applies to this contract only if the vehicle financed in the contract was purchased for personal, family, or household use.

***The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.***

Any change to this contract must be in writing. Both you and we must sign it. No oral changes to this contract are enforceable.

Buyer X ______ Co-Buyer X N/A

**See back for other important agreements.**

**CONSUMER WARNING: Notice to the buyer--Do not sign this contract before you read it or if it contains any blank spaces. You are entitled to a copy of the contract you sign. Under the law, you have the right to pay off in advance all that you owe and under certain conditions may save a portion of the finance charge. You will keep this contract to protect your legal rights.**

**BUYER'S ACKNOWLEDGEMENT OF CONTRACT RECEIPT: YOU AGREE TO THE TERMS OF THIS CONTRACT AND ACKNOWLEDGE RECEIPT OF A COMPLETED COPY OF IT. YOU CONFIRM THAT BEFORE YOU SIGNED THIS CONTRACT, WE GAVE IT TO YOU, AND YOU WERE FREE TO TAKE IT AND REVIEW IT.**

Buyer Signs X ______ Date 04/09/26 Co-Buyer Signs X N/A Date N/A

Buyer Printed Name SHERRY MARIE NEWTON Co-Buyer Printed Name N/A

If the "business or commercial" use box is checked in "Use for Which Purchased": Print Name N/A Title N/A

**Co-Buyers and Other Owners** — A co-buyer is a person who is responsible for paying the entire debt. An other owner is a person whose name is on the title to the vehicle but does not have to pay the debt. The other owner agrees to the security interest in the vehicle given to us in this contract.

Other owner signs here X N/A Date N/A Address N/A

Seller signs MORITZ CHRYSLER/JEEP LTD Date 04/09/26 By X ______ Title F & I

THIS CONTRACT IS NOT VALID UNTIL YOU AND WE SIGN IT.

Seller assigns its interest in this contract to BANK OF AMERICA NA (Assignee) under the terms of Seller's agreement(s) with Assignee.

☐ Assigned with recourse ☒ Assigned without recourse ☐ Assigned with limited recourse

Seller MORITZ CHRYSLER/JEEP LTD

By X ______ Title F & I

[redacted]


©2025 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

ORIGINAL LIENHOLDER

Collateral Management Solutions
9750 Goethe Road | Sacramento, CA 95827
www.Vitu.com

# Bank of America

## Lien and Title Information

### Lienholder

**ELT Lien ID** [redacted]
**Lienholder** BANK OF AMERICA, N A
**Lienholder Address** PO BOX 2759
JACKSONVILLE, FL 32203
**Lien Release Date**

### Vehicle and Titling Information

| | | | |
|---|---|---|---|
| **VIN** | 1G1ZE5SX8KF189487 | **Issuance Date** | 5/5/2026 |
| **Title Number** | [redacted] | **Received Date** | 5/5/2026 |
| **Title State** | TX | **ELT/Paper** | ELECTRONIC |
| **Year** | 2019 | **Odometer Reading** | 121922 |
| **Make** | CHEV | **Branding** | |
| **Model** | | | |

**Owner 1** SHERRY MARIE NEWTON
**Owner 2**
**Owner Address** [redacted]

**Printed:** Monday, October 26, 2026 4:31:07 AM PST